DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment entered on a jury verdict in favor of an employer in a Federal Employer's Liability Act suit. For the reasons that follow, we affirm.
 {¶ 2} The caboose of a railroad train used to serve as a traveling office for the conductor and an observation platform for brakemen who, in the event of an emergency, could stop the train. The caboose and the railway workers once housed there are now gone, replaced by something called an End of Train ("EOT") device.
 {¶ 3} The EOT is a rectangular box-like device with an attached air hose coupling that is mounted on the last car of a train. It is attached to the train's air brake system, monitoring air pressure and relaying that information to the locomotive. A light to make the train visible for traffic from the rear, a motion detector and a remote controlled emergency brake relay are also included in the EOT.
 {¶ 4} The air hose on an EOT extends approximately three feet from its bottom. At the end of the hose is a metal connector called a gladhand. When the EOT is not mounted on a train, the hose is doubled over and attached to the EOT box by an "S" connector; a piece of heavy gauge wire bent in to the shape of the letter "s." One end of the "S" connector passes through a hanger hole on the EOT, the other through a hole in a tab of the gladhand connector.
 {¶ 5} On May 13, 2002, appellant, Dennis A. Staerker, Jr., was working as a "car man" at a Walbridge, Ohio rail yard operated by his employer, appellee CSX Transportation, Inc. One of appellant's duties was to test EOT devices before they were placed on outbound trains. According to appellant, when he lifted one of the EOT's onto the test bench, the gladhand became detached from the "S" connector releasing the air hose. Appellant reported that the hose sprang open, the metal gladhand striking him above his left knee.
 {¶ 6} Appellant testified that, although the blow was painful, he was able to finish his shift. At home in the early morning hours, however, the pain increased and the knee began to swell. This prompted a visit to an emergency room where the joint was x-rayed and appellant advised to stay off the leg and apply ice. Later that morning, appellant reported to his worksite and filed an accident report.
 {¶ 7} A few days after the injury, appellant saw his family physician who prescribed pain medicine and referred appellant to an orthopedic specialist. The specialist directed appellant to physical therapy, but, according to appellant, with little effect. This specialist then performed surgery to repair the knee cartilage. Even so, appellant reported that the pain continued. Several months later, appellant's right knee began to swell and ache as well. In May 2003, appellant underwent a second surgery, this time involving both knees. Another round of physical therapy followed.
 {¶ 8} During this entire time, appellant was off work. He did not return to the rail yard until January 6, 2004. On his return, appellant reported, he continued to have difficulty with pain in the left knee. In August 2004, appellant developed fluid on the left knee, which led to a third surgery. Appellant testified that following this third procedure, the surgeon advised him that, if he continued the activities in his present job, he would require a knee replacement within three to five years.
 {¶ 9} Appellant sued appellee in the trial court under the Federal Employer's Liability Act, alleging that his injury was the result of appellee's negligence. Appellee denied liability. As the matter proceeded through discovery, attention focused on the "S" hook which was supposed to hold the gladhand to the body of the EOT device. Appellant's expert opined that the hook utilized in this instance was insufficient to accomplish its purpose and that a "closed throated clip" would have been a safer alternative.
 {¶ 10} Late in discovery, appellant obtained original specifications from the EOT manufacturer. The "S" hook in these specifications was of ".25 wire × 1.78 LG" with a gap for accepting the gladhand of ".62plusmn.12" inches. This was referred to at trial as a "Heavy Duty `S' hook." Testimony from railway workers at trial was that a lighter gauge "S" clip was ordinarily used on appellee's EOT's. At trial, appellant would argue that this lighter gauge clip could bend more easily that the heavy duty clip and was, consequently, more dangerous.
 {¶ 11} Prior to trial, appellee filed a motion in limine, seeking to exclude testimony from appellant's expert concerning closed throated clips as a safer alternative to an "S" clip. On the day the trial began, the court granted the motion and noted appellant's exception.
 {¶ 12} The trial went forward with appellant recounting his injury and subsequent condition. In closing, appellant's counsel asked the jury to award him $1.2 million in damages. Appellee challenged appellant's testimony, asserting that, if indeed appellant was injured as he reported, the injury was his own fault. Appellee suggested that much of the pain of which appellant complained was actually the result of gout exacerbated by appellant's weight.
 {¶ 13} The matter was submitted to the jury which, following several hours of deliberation, returned a six to two verdict of no negligence. The trial court entered judgment on the verdict and denied appellant's subsequent motions for a new trial or a judgment notwithstanding the verdict. From the judgment on the verdict and the trial court's post verdict rulings, appellant now brings the appeal.
 {¶ 14} Appellant sets forth the following three assignments of error:
 {¶ 15} "I. The trial court abused its discretion and materially prejudiced appellant Staerker by ordering the exclusion of key evidence of an alternative hooking mechanism for the air hose to the end-of-train device which a) was already in use on the railroad's property prior to appellant Staerker's injury, b) was personally observed in use by the railroad's corporate trial representative prior to the injury and c) would have, in the opinion of the railroad's corporate representative and appellant Staerker's retained expert, prevented the injury, in an action under the Federal Employer's Liability Act,45 U.S.C. § 51 et seq.
 {¶ 16} "II. The trial court erred in finding that the verdict was sustained by the weight of the evidence and denying appellant Staerker's Motion for New Trial.
 {¶ 17} "III. The trial court erred in finding that there was substantial evidence to support the jury's verdict and in denying appellant Staerker's Motion for Judgment N.O.V."
 I. Motion In Limine {¶ 18} In his first assignment of error, appellant contends that the trial court erred in granting appellee's motion in limine, excluding testimony concerning the comparative safety of a closed throated hose clip. According to appellant, this evidence was vital to establish that appellee could have provided a safer work place. Appellant insists that the trial court abused its discretion in excluding it.
 {¶ 19} A motion in limine is a precautionary request directed to the discretion of the court to limit introduction of specified evidence until its admissibility may be determined outside the presence of the jury. Riverside Methodist Hosp. Assn. v.Guthrie (1982), 3 Ohio App.3d 308, 310. A ruling on a motion in limine is interlocutory, pending the court's assessment of the evidentiary issue in the context of trial. Caserta v. Allstate
(1983), 14 Ohio App.3d 167, 170. The ruling is thus subject to change if the evidence introduced at trial properly raises the issue. Moss v. Nationwide Mut. Ins. Co. (1985),24 Ohio App.3d 145. For this reason, a ruling on the motion does not preserve any error for review. Mullins v. Inderbitzen, 6th Dist. No. L-03-1121, 2004-Ohio-1658, at ¶ 24, citing State v. Hill
(1996), 75 Ohio St.3d 195, 202-203. The evidence must be presented at trial and a proper objection made to preserve error for appeal. Failure to raise the issue in the trial context waives the right to raise the same issue on appeal. Id., citingState v. Grubb (1986), 28 Ohio St.3d 199, 203.
 {¶ 20} In the present matter, the trial court granted the motion in limine prior to the jury being sworn. The issue was never again raised. Consequently, absent preservation of the question in the context of trial, it is deemed waived. Accordingly, appellant's first assignment of error is found not well-taken.
 II. JNOV — New Trial {¶ 21} In his remaining assignments of error, appellant insists that the trial court erred in denying his motion for judgment notwithstanding the verdict or, alternatively, for a new trial.
 {¶ 22} The standard for granting a judgment notwithstanding the verdict or, in the alternative, for a new trial pursuant to Civ.R. 50(B) is the same as that for granting a directed verdict pursuant to Civ.R. 50(A). Texler v. D.O. Summer's Cleaners
(1998), 81 Ohio St.3d 677, 679. If, after construing the evidence most strongly in favor of the party against whom the motion is directed, the court finds that upon any determinative issue reasonable minds could come to only one conclusion on the evidence submitted and that conclusion is adverse to the nonmoving party, then the court must sustain the motion. Id., citing Civ.R. 50(A)(4). If there is substantial competent evidence in favor of the non-moving party upon which reasonable minds might reach different conclusions, the motions should be rejected. Id., citing Kellerman v. J.S. Durig Co. (1964),176 Ohio St. 320. A party who bears the burden of proof can seldom complain when a trier of fact finds that the burden has not been met. Jawarski v. Perz (June 13, 1997), 6th Dist. No. L-96-334;In re Scott (1996), 111 Ohio App.3d 273, 274.
 {¶ 23} In this matter, appellant bore the burden of proving that he was injured on the job and that his injury was caused by appellee's breach of duty to provide a safe working place. Although at trial appellee did not directly challenge the events appellant described, it did point out that appellant was the only witness to the injury and strongly argued that the injuries of which he complained could be explained as being a result of gout or his weight. We cannot say that the evidence submitted was so overwhelmingly convincing that reasonable minds could not form different conclusions as to whether appellant met his burden of proof. Accordingly, appellant's second and third assignments of error are not well-taken.
 {¶ 24} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Singer, P.J., Skow, J., concur.