[Cite as *O'Loughlin v. Ottawa St. Condominium Assn.*, 2018-Ohio-327.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ruth A. O'Loughlin, et al

Appellants

v.

Ottawa Street Condominium
Association, et al.

Appellees

Court of Appeals No. L-16-1128

Trial Court No. CI0201302988

**<u>DECISION AND JUDGMENT</u>**

Decided: January 26, 2018

* * * * *

Erik G. Chappell and Julie A. Douglas, for appellants.

John J. McHugh, III, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Plaintiffs-appellants, Ruth A. O'Loughlin, Marlene Golembiewski,

Robert M. Wheeler, Jr., and Linda T. Wheeler, appeal multiple judgment entries

including a trial verdict rendered by the Lucas County Court of Common Pleas. For the

reasons set forth herein, we affirm.

**{¶ 2}** The salient facts of this case are as follows. The Ottawa Street Condominiums opened in 2003, following a building renovation converting the 1920s building to 22 condominium units. In September 2003, the Association and the Ottawa Street Condominium Board of Trustees ("the Board") were formed pursuant to the "Declaration and By-Laws Creating and Establishing a Plan for Condominium Ownership" (declaration and bylaws).

**{¶ 3}** Initially, the Board was comprised of five members, including a treasurer. When the treasurer resigned in 2006, the accounting firm of DeWalt & Gallup was hired to maintain the financial records and books of the Association. DeWalt & Gallup provided annual statements to the association based on the Association's fiscal year of May 1 to April 30.

**{¶ 4}** Since 2007, the Board was comprised of three members, appellees Michael Snyder (first elected in 2004), Thomas Joyce (2005), and William Connolly (2007), all unit owners and residents and serving on a volunteer basis. Snyder served as president of the Board.

**{¶ 5}** Appellant Ruth O'Loughlin purchased unit 4-D in 2004, O'Loughlin, with defendant Marlene Golembiewski, jointly purchased a second unit, 4-B, in 2004. Appellants Robert and Linda Wheeler purchased unit 4-E in 2004. Appellants purchased their properties for investment and/or rental purposes. When appellants purchased their units, the monthly assessment due from each member was $150. These sums were collected pursuant to the declaration and were used for operating expenses including

2.

insurance, utilities, maintenance of common areas, landscaping, and maintaining a reserve for unexpected repairs.  In 2007, the monthly dues were increased to $225.

{¶ 6} In January 2007, Michael Guess purchased unit 5-B and began residing in the building.  Mr. Guess and a few other unit owners, including appellants O'Loughlin and the Wheelers, had concerns about the finances of the Association and decided to conduct an independent audit.  On January 23, 2008, they requested "access to all books, records and financial statements of the association" pursuant to the bylaws.  In response, appellee Snyder presented the group with a CD with the scanned documents and with account numbers redacted.  Also, redacted were the names of those behind in their dues payments; Snyder stated that this was done on advice of counsel.

{¶ 7} The results of the audit were disseminated to all Association members in a letter of April 23, 2008, and included observations that the reserve fund was not properly funded, that the $225 monthly assessment dues were not sufficient to cover operating expenses and maintain a proper percentage in the reserve fund, that there was inadequate separation of duties among the Association's officers, and that "critical" Association bylaws were being ignored.  The letter suggested that, inter alia, Association meetings be held bi-annually, that quarterly financials be distributed, that a lien be placed on the delinquent owner's unit, and that the fiscal year be aligned with the calendar year.

{¶ 8} In response, appellee Snyder, in a letter to the Association, stated that Guess' letter was "at best inaccurate and misleading."  However, Snyder's May 5, 2008 letter did acknowledge that the reserve fund was inadequate and that a dues increase was in order.

3.

Unit owners were then informed that the dues would be increased to $300 beginning June 1, 2008. The above events set the stage for the May 28, 2008 annual meeting during which appellants, especially O'Loughlin, expressed dissatisfaction with the Board and its practices. The Board hired off-duty uniformed police officers to attend subsequent meetings; the officers remained outside of the meeting room.

{¶ 9} The May 2009 meeting minutes indicated that the budget for the next fiscal year was projected to be the same as the prior year. At the May 2010 meeting, appellant O'Loughlin, attempted to initiate discussion of reducing monthly dues because the reserve was well-funded. The discussion was not permitted because it was not on the agenda. O'Loughlin requested a vote on the reserve fund requirement and the issue of a formal adoption of a 2010-2011 operating budget. The requests, which were included a letter dated May 20, 2010, went unheeded.

{¶ 10} The discord between appellees and appellants escalated and in June 2010, personal attacks on appellee Snyder were responded to by counsel for the Association. Specifically, appellee Snyder's employer was allegedly contacted and his character and reputation were placed into question.

{¶ 11} Ultimately, around August-September 2010, appellants' dissatisfaction with the Board and their belief that their requests were being ignored resulted in appellants' decision to stop paying monthly Association dues. On September 30, 2010, an attorney on behalf of O'Loughlin and Wheeler, sent a letter to the Board requesting financial records and annual meeting minutes, and requesting that a special meeting be

4.

held in order to vote on the amount of the annual assessment. Appellees did not respond to this letter.

{¶ 12} On June 6, 2011, the Board sent a letter to all unit owners informing them that pursuant to Ohio condominium law, any owner behind in Association dues was suspended from voting on Association matters. Thereafter, on September 21, 2011, letters were delivered to the renters of appellants' units informing them that access to "recreational facilities" (including the rooftop deck and fitness center) would be suspended until the unit owners paid all delinquent dues.

{¶ 13} On December 8, 2011, the Association filed complaints for foreclosure on statutory liens against appellants. Appellants filed counterclaims for declaratory and injunctive relief, negligence, breach of contract, quiet title, breach of fiduciary duty, and tortious interference with business relations. In February 2013, the matter was over-age and was voluntarily dismissed by the Association.

{¶ 14} On May 22, 2013, the instant action was filed by appellants asserting essentially the same claims set forth as counterclaims in the prior action; an amended complaint was filed on August 8, 2013. Appellees filed counterclaims mirroring their claims in the prior action. Appellees filed a motion to dismiss which was granted as to six of appellants' ten claims. The parties filed motions for summary judgment. The court denied appellants' motion and granted appellees' motion as to the breach of contract claim regarding repairs made to the building.

{¶ 15} Prior to trial on the remaining claims, defendants filed a motion in limine to preclude the testimony of Michael Roberts and Theresa Quinn which was granted. Appellants filed a motion in limine to exclude reference at trial to the affidavits and notice of lien filed in 2011 due to improper notice, documents provided by DeWalt & Gallup, and amounts allegedly owed by appellants to the Association for the years 2012, 2013, 2014, and 2015. Their motion was denied.

{¶ 16} The matter proceeded to a trial to the court from September 28, to October 2, 2015, on appellants' claims for declaratory judgment regarding their right to inspect records and request to invalidate and discharge the liens, action to quiet title, breach of contract claim, and claim for spoliation of evidence. Also before the court were appellees' claims seeking foreclosure of the liens, a money judgment of arrearages in Association dues, interest, costs and attorney fees.

{¶ 17} Following written trial summations by the parties, the court issued a verdict in favor of appellees. Appellants filed a request for findings of facts and conclusions of law. Appellants' request to file objections to appellees' proposed findings of fact and conclusions of law was denied. The court's findings of facts and conclusions of law was filed on February 24, 2016. On June 2, 2016, appellees were awarded $130,158.23 in attorney fees. This appeal followed.

6.

{¶ 18} Appellant now sets forth ten assignments of error for our review:

No. 1: The trial court erred when it granted defendants' motion to dismiss Counts III, V, VI, VIII, IX and X of plaintiffs' amended complaint and denied plaintiffs' motion for reconsideration.

No. 2: The trial court erred when it denied plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment as to plaintiffs' breach of contract claim premised on the tuck pointing repair.

No. 3: The trial court erred when it granted defendants' motion in limine filed on September 16, 2015 as to Michael J. Roberts and Theresa Quinn.

No. 4: The trial court erred when it denied plaintiffs' motion in limine filed on September 23, 2015 as it relates to the affidavits and notice of lien for unpaid assessments filed in 2011.

No. 5: The trial court erred when it denied plaintiffs' motion in limine filed on September 23, 2015 as it related to excluding documents to be produced by DeWalt & Gallup, Inc.

No. 6: The trial court erred when it denied plaintiffs' motion in limine filed on September 23, 2015 as it relates to excluding evidence of amounts allegedly owed by plaintiffs to defendant, Ottawa Street Condominium Association for the years 2012, 2013, 2014, and 2015.

7.

No. 7: The trial court erred when it rendered a general verdict in favor of defendants and against plaintiffs on all plaintiffs' claims for relief and in favor of defendants and against plaintiffs on defendants' counterclaims for foreclosure, money damages and attorney fees.

No. 8: The trial court erred when it denied plaintiffs' motion for leave to file objections and/or request additions and/or amendments to proposed findings of fact and conclusions of law submitted by defendants.

No. 9: The trial court's findings of fact and conclusions of law were against the manifest weight of the evidence.

No. 10: The trial court erred when it granted defendants' application for award of attorney fees and awarding defendants attorney fees in the amount of $130,158.23 against plaintiffs, jointly and severally.

{¶ 19} The legal framework for the issues herein is found in the Association declaration and by-laws and the Ohio Condominium Act of R.C. Chapter 5311.

{¶ 20} R.C. 5311.19 provides, in relevant part:

All unit owners, their tenants, all persons lawfully in possession and control of any part of a condominium property, and the unit owners association of a condominium property shall comply with all covenants, conditions, and restrictions set forth in a deed to which they are subject or in the declaration, the bylaws, or the rules of the unit owners association, as lawfully amended. Violations of those covenants, conditions, or restrictions

8.

shall be grounds for the unit owners association or any unit owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action.

{¶ 21} Additionally, R.C. 5311.09 and 5311.091 require a condominium unit owners' association to maintain complete books and record of accounts and a member of the association has the right to examine and copy such records pursuant to "reasonable standards" set forth in the declaration and bylaws. Further sections will be addressed herein when relevant.

## Motion to Dismiss

{¶ 22} Appellants' first assignment of error asserts that the trial court erroneously granted appellees' motion to dismiss several of their claims. Appellants contend that sufficient facts were alleged to support each of the claims. We initially note that this court's standard of review for dismissals granted pursuant to Civ.R. 12(B)(6) is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). Under Civ.R. 12(B)(6), failure to state a claim, the court must determine whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Guess v. Wilkinson*, 123 Ohio App.3d 430, 434, 704 N.E.2d 328 (10th Dist.1997). In reaching its decision on a Civ.R. 12(B)(6) motion, a court must

9.

construe the complaint in the light most favorable to the plaintiff, must presume all of the factual allegations in the complaint as true, and must make all reasonable inferences in favor of the plaintiff. *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 108, 647 N.E.2d 799 (1995)  However, "'unsupported conclusions of a complaint are not considered admitted and are not sufficient to withstand a motion to dismiss.'" *Phelps v. Office of the Atty. Gen.*, 10th Dist. Franklin No. 06AP-751, 2007-Ohio-14, ¶ 4, quoting *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994).

{¶ 23} Appellants raised the following dismissed claims in their August 8, 2013 complaint:  tortious interference with contractual relationships (Count III), slander of title (Count V), negligence (Count VI), failure to discharge board obligations (Count VIII), breach of fiduciary duties (Count IX), and malicious prosecution (Count X).  In appellees' August 23, 2013 motion to dismiss, they first argued, generally, that several claims did not meet the requirements under Civ.R. 8(A) in that they failed to allege "operative facts" supporting all of the necessary elements.  As to appellants' third, fifth, sixth, and eighth claims, appellees contended that because they sound in tort the claims could not be maintained in a contractual dispute against a condominium association. Appellees further argued that as defined by statute, the Board of Trustees of the Association or the Director could not be sued independent of the Association.  Finally, appellees claimed that R.C. 5311 imposes no fiduciary duty on boards of condominium associations.  In opposition, appellants argued that appellees improperly supplied its

10.

version of the facts inviting the court to "weigh" them prematurely. Appellants further set forth arguments in support of the viability of the claims at issue.

{¶ 24} We will address each claim and argument in turn. First, appellants argue that they stated a claim for tortious interference with contractual relationships. In order to prove this tort, a plaintiff must allege "(1) the existence of a contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages from that breach." *Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 1st Dist. Hamilton Nos. C-010133, C-010423, 2002 Ohio App. LEXIS 1304 (Mar. 22, 2002).

{¶ 25} In their amended complaint, appellants alleged that they leased their units to renters, that appellees knew of the rentals, that by suspending the renters' access to the recreational facilities and threatening at least one renter with a fine if he used the facilities appellees interfered with the contract between appellants and their renters, and that appellants were damaged by the acts inducing the renters to breach their lease agreements and the loss of the benefit of the leases.

{¶ 26} Reviewing the allegations in the complaint, other than appellants general dispute regarding the propriety of the assessments, they have alleged no lack of justification for the Board's act of denying their tenants access to the recreational facilities. The bylaws specifically allow the unit owners to lease their units but expressly condition that "the lease is made subject to the covenants and restrictions of this Declaration and further subject to the By-Laws of the Association." Further, a

11.

condominium association and board had the statutory authority to "[s]uspend the voting privileges and use of recreational facilities of a unit owner who is delinquent in the payment of assessments for more than thirty days." R.C. 5311.081(B)(18). Appellants do not dispute they were delinquent on the assessments for more than 30 days; thus, they failed to state a claim for relief.

{¶ 27} As to the next claim, slander of title, appellants alleged that appellees' filing of the liens themselves were "slanderous statements" which "disparaged" appellants' title to their units. Appellants claimed the statements were false because the liens were invalid. Slander of title to real estate is a tort action against one who falsely and maliciously defames title to property, generally by wrongfully recording an unfounded claim. *Nye v. White-Rhoades*, 3d Dist. Marion No. 9-15-04, 2015-Ohio-3719, ¶ 36, citing *Prater v. Dashovsky*, 10th Dist. Franklin No. 07AP-389, 2007-Ohio-6785, ¶ 11. A successful cause of action for slander of titles requires the claimant prove: "'1) there was a publication of a slanderous statement disparaging claimant's title; 2) the statement was false; 3) the statement was made with malice or made with reckless disregard of its falsity; and 4) the statement caused actual or special damages.'" *Prater* at ¶ 12, quoting *Green v. Lemarr*, 139 Ohio App.3d 414, 430-431, 744 N.E.2d 212 (2d Dist.2000).

{¶ 28} As to the element of falsity, appellants do not contend, nor can they, that the Board did not have the authority to file a lien as a result of an unpaid assessment. While appellants disputed the amount of the assessments, they did not dispute their

12.

refusal to pay the assessments. Accordingly, appellants failed to state a claim for relief for slander of title.

{¶ 29} In their complaint's sixth claim for relief, negligence, appellants argued that the Board failed to repair and maintain common areas in contravention of the declaration and bylaws and R.C. 5311.14(A). Similarly, appellants' eighth claim for relief, failure to discharge board obligations, argued that the Board failed, in contravention of the declaration and bylaws to keep proper records, adopt a budget, and manage and maintain the condominium property.

{¶ 30} If a condominium association violates the terms of its bylaws, the unit owners can maintain a claim for breach of contract. (Citations omitted.) *Wolf v. Southwestern Place Condominium Assn.*, 7th Dist. Mahoning No. 01 CA 93, 2002 Ohio App. LEXIS 5247, *9 (Sept. 27, 2002). Such actions include claims relating to the statutory duty to repair and maintain the common areas under R.C. 5311.14(A). *See Behm v. Victory Lane Unit Owners' Assn.*, 133 Ohio App.3d 484, 728 N.W.2d 1093 (1st Dist.1999). Accordingly, the actual nature of these claims sounds in contract, not tort, and the trial court did not err in finding they should be dismissed.

{¶ 31} In their ninth claim for relief, appellants argued that appellees breached their fiduciary duty to the property owners and imposed by the declaration, R.C. Chapter 5311, and R.C. 1702.30. Appellants again asserted that the Board failed to "properly and fairly estimate assessments and properly manage the Association." Appellants also

13.

argued that the retaliatory act of filing the liens was also a breach of their fiduciary duty to act in the property owners' best interests.

{¶ 32} A fiduciary duty is generally defined as a duty, created by an individual's undertaking, to act primarily for the benefit of others in connection with the undertaking. (Citations omitted.) *Waffen v, Summers*, 6th Dist. Ottawa No. OT-08-034, 2009-Ohio-2940, ¶ 40. Whether R.C. Chapter 5311 creates a fiduciary duty for condominium boards was addressed in *Kleemann v. Carriage Trace, Inc.*, 2d Montgomery No. 21873, 2007-Ohio-4209. In *Kleemann*, the appellant condominium owner sued a non-profit condominium association and several of its board members. *Id.* at ¶ 1. Appellant alleged, inter alia, that the board members violated their fiduciary duty by authorizing various expenditures. *Id.*

{¶ 33} On appeal, the court concluded that boards of condominium associations are not charged with a common law or statutory fiduciary duty. *Id.* at ¶ 40. The court reasoned that the Ohio Condominium Act, R.C. Chapter 5311, created rights and remedies that did not exist at common law. *Id.* at ¶ 38, citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 282, 617 N.E.2d 1075 (1993). The *Kleemann* court did, however, find that the board, as a non-profit corporation (which the parties' agreed), was subject to the duties of directors under R.C. 1702.30(B). *Id.* at ¶ 42.

{¶ 34} In the present matter, the record reflects that the Board is an unincorporated association and, thus, it was not subject to R.C. 1701.30(B). Accordingly, because there

14.

was no statutory or common law fiduciary duty, the trial court did not err in dismissing this claim.

{¶ 35} Finally, appellants' tenth claim for relief was a claim for malicious prosecution. In order to establish a viable claim for malicious prosecution in a civil action, a claimant must show:

> "(1) malicious institution of prior proceedings against the plaintiff by defendant, * * *; (2) lack of probable cause for the filing of the prior lawsuit, * * *; (3) termination of the prior proceedings in plaintiff's favor, * * *; and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *." *Crawford v. Euclid Natl. Bank* (1985), 19 Ohio St.3d 135, 139[, 483 N.E.2d 1168]. (Citations omitted.)" *Pheils v. Garber-Lawrence Publishing Group*, 6th Dist. Lucas No. L-92-418, 1993 Ohio App. LEXIS 5914, *35-36 (Dec. 10, 1993).

{¶ 36} Reviewing these elements, it is apparent that the prior proceedings were not terminated in appellants' favor. The initial matter was terminated pursuant to a voluntary dismissal, without prejudice. Such a dismissal is not considered a termination of the proceedings in the plaintiff's favor. *Jones v. Nichols*, 12th Dist. Warren No. CA2012-02-009, 2012-Ohio-4344, ¶ 12, citing *Miller v. Unger*, 192 Ohio App.3d 707, 2011-Ohio-990, 950 N.E.2d 241 (12th Dist.), ¶ 16. Thus, the dismissal of this claim was not in error.

15.

**{¶ 37}** Based on the foregoing, we find that the trial court did not err when it granted appellees' motion to dismiss Counts III, VI, VII, IX and X of appellants' amended complaint.  Appellants' first assignment of error is not well-taken.

## Motion for Summary Judgment

**{¶ 38}** Appellants' second assignment of error argues that the trial court erred when it granted appellees' summary judgment motion as to appellants' breach of contract claim; specifically, the claim premised on the tuckpointing repair.

**{¶ 39}** Appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination.  *Brown v. County Commr.'s of Scioto County*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).  Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).  The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.  *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).  However, once the movant supports the motion with appropriate evidentiary materials, "an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as

16.

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶ 40} In their motion for summary judgment appellees, inter alia, argued that appellants' claims that the Association breached its duties to maintain the common areas, specifically the brickwork on the exterior of the building and that such breach damaged the building and reduced its value, were unfounded. Appellants specifically contended that the repair attempts undertaken by board member Michael Snyder were "shoddy" and unprofessional.

{¶ 41} As correctly asserted by appellants, the Association's declaration and bylaws give the Board the authority and duty to maintain, repair, and improve the common areas. They do not, however, specify how those duties are to be carried out.

{¶ 42} In his deposition, Snyder testified that an initial attempt to have professional tuckpointers (persons who lay and repair brickwork mortar) repair the building was unsuccessful after the lift fell into the adjacent creek. Following the incident, Snyder testified that companies were reluctant to do business with them. Snyder further stated that the verbal quotes that were received were cost-prohibitive.

{¶ 43} Snyder testified that over the past few years he has personally undertaken tuckpointing repairs to the brickwork. Snyder agreed that he did a "significant" amount of work, indicated that he was assisted by a business associate, and admitted that he had no formal training in mortar or masonry work. Snyder did detail the research he undertook regarding optimal weather conditions for the work, products, and technique.

17.

Finally, Snyder stated that he had not received any complaints about the work he completed.

{¶ 44} Based on the foregoing, we find that the trial court properly ruled on the appellees' motion for summary judgment. This court finds nothing to indicate that the tuckpointing repairs were undertaken with any improper purpose or absence of good faith. Appellants' second assignment of error is not well-taken.

## Motions in Limine

{¶ 45} Appellants' third, fourth, fifth, and sixth assignments of error challenge the court's rulings on various motions in limine filed by the parties. An appellate court reviews decisions involving the admissibility of evidence for an abuse of discretion. *Kinn v. HCR ManorCare*, 2013-Ohio-4086, 998 N.E.2d 852, ¶ 24 (6th Dist.). Likewise, we review a trial court's decision regarding a motion in limine for an abuse of discretion. (Citation omitted.) *Id.*

{¶ 46} A motion in limine is a precautionary request directed to the discretion of the court to limit introduction of specified evidence until its admissibility may be determined outside the presence of the jury. *Staerker v. CSX Transp., Inc.*, 6th Dist. Lucas No. L-05-1416, 2006-Ohio-4803, ¶ 19.

A ruling on a motion in limine is interlocutory, pending the court's assessment of the evidentiary issue in the context of trial. The ruling is thus subject to change if the evidence introduced at trial properly raises the issue. For this reason, a ruling on the motion does not preserve any error

for review. The evidence thus must be presented at trial and a proper objection made to preserve the error for appeal. (Citations omitted) Id.

{¶ 47} The appealable error, however, may not be predicated upon a ruling which excludes evidence unless a substantive right of a party is affected. Evid.R. 103(A).

{¶ 48} Appellants first argue that the trial court erred by granting appellees' motion in limine to exclude the testimony of Michael Roberts and Theresa Quinn. The court granted the motion as to these two witnesses because they were not disclosed in accordance with the court's pretrial order or the local rule that witnesses be disclosed 60 days prior to trial. The court found that appellees would be prejudiced because they had insufficient time to question the witnesses. Upon review, we cannot say that the trial court abused its discretion in precluding their testimony.

{¶ 49} Next, appellants contend that the court erred when it denied their motion in limine to exclude affidavits and notice of lien for unpaid assessments filed in 2011. Appellants contend that, in contravention of the declaration and bylaws and R.C. Chapter 5311, they were not given proper, written notice and opportunity to be heard. Thus, appellants argue that any evidence of the validity of the liens should have been excluded.

{¶ 50} The court denied the motion finding that the precise issue was determined to be an issue of fact which precluded appellants' summary judgment motion and was the basis for the impending trial proceedings. We cannot say the court abused its discretion in so finding. As will be discussed infra, it is debatable whether the above-quoted section

is applicable in proceedings commenced due to the nonpayment of monthly condominium dues.

{¶ 51} Appellants further argue that the court erroneously denied their motion in limine to preclude the admission of documents retained by DeWalt & Gallup and evidence relating to the amounts allegedly owed by appellants for the years 2012-2015. Appellants argued that appellees' counterclaim alleged only amounts owed through 2011. The court found that these alleged arrearages were sufficiently pled in appellees' counterclaim, were the subject of discovery requests from appellants, and were addressed on summary judgment. Upon review, we find no error.

{¶ 52} Based on the foregoing, we find that appellants' third, fourth, fifth, and sixth assignments of error are not well-taken.

### Trial Verdict

{¶ 53} Appellants' seventh and ninth assignments of error assert that the trial court erroneously granted a verdict in favor of appellees' claims and against its claims as the court's findings were against the weight of the evidence. Specifically, the court denied appellants' request for declaratory judgment, determined that the liens were valid, and that appellees' did not breach either the declaration or bylaws by failing to prepare an annual budget and maintain proper records. The court further rejected appellants' arguments that the liens filed against them were discriminatory, retaliatory, and in bad faith. The court also denied appellants' request to dismiss appellees' claims based upon

20.

their assertion that appellees willfully destroyed evidence. Finally, the court awarded attorney fees.

{¶ 54} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), paragraph one of the syllabus. When reviewing a civil manifest weight claim, the appellate court has the obligation to presume the findings of the trier of fact are correct because the trial judge had the opportunity to assess the witnesses' demeanor and credibility. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Therefore, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶ 55} Appellants contend that the court erred in denying appellants' claim for declaratory judgment under R.C. 5311.09 and 5311.091. Specifically, appellants argue that the trial court erred when it found that appellees did not breach the declaration or the bylaws by failing to prepare an annual budget and keep a record of their acts relating thereto. Article XV of the declarations provides, in part:

> (1) Prior to the beginning of each fiscal year of the Association, the
> Board shall estimate and prorate among the Units on the basis of the

interest of each Unit in the Common Areas, common expenses of the Association, consisting of the following:

a. The estimated next fiscal year's cost of the maintenance, repair, and other services described in this Declaration;

b. The estimated next fiscal year's costs for insurance and bond premiums * * *

c. The estimated next fiscal year's costs for utility services not separately metered;

d. The estimated amount to be collected to maintain a general operating reserve * * *

e. An amount adequate by the Board to maintain a reserve for the cost of unexpected repairs and replacements * * *

f. The estimated next fiscal year's costs for the operation, management, and administration of the Association, including, but not limited to, fees for property management, fees for legal and accounting services * * *.

{¶ 56} Appellants further contend that at trial, appellee Michael Snyder's testimony that any budget created by the Board was "chicken scratch" belies the court's finding that an annual budget within the meaning of the declaration and bylaws was created. We note that at trial, appellee Snyder thoroughly explained the process he undertook in arriving at the budget for the following fiscal year. Snyder explained that he

22.

would review published rates for the utility companies, contact the insurance agent, speak with contractors, landscapers, discuss with Board members pressing maintenance concerns, and review all bills for the preceding 12 months. Snyder admitted that he did write down some numbers to aid in calculations but that there was no analysis, only numbers. Snyder stressed that nothing that he wrote down could not be obtained by simply computing the past year's bills. We find that Snyder's process, though informal, cannot be said to be in contravention of either statutory law or Association rules.

{¶ 57} With regard to their requests for various financial books and records, R.C. 5311.091(A) gives a condominium association member the right to:

> examine and copy the books, records, and minutes described in division (A) of section 5311.09 of the Revised Code pursuant to reasonable standards set forth in the declaration, bylaws, or rules the board promulgates, which may include, but are not limited to, standards governing the type of documents that are subject to examination and copying, the times and locations at which those documents may be examined or copied, and the specification of a reasonable fee for copying the documents.

{¶ 58} However,

> [t]he unit owners association is not required to permit the examination and copying of any of the following from books, records, and minutes:

(1) Information that pertains to condominium property-related personnel matters;

(2) Communications with legal counsel or attorney work product pertaining to pending litigation or other condominium property-related matters;

(3) Information that pertains to contracts or transactions currently under negotiation, or information that is contained in a contract or other agreement containing confidentiality requirements and that is subject to those requirements;

(4) Information that relates to the enforcement of the declaration, bylaws, or rules of the unit owners association against unit owners;

(5) Information the disclosure of which is prohibited by state or federal law. R.C. 5311.091(B).

**{¶ 59}** Denying appellants' claim, the court found:

The evidence in this case established that a complete set of all financial records from 2004 to 2008 were provided to all Association members. There is also evidence that a September 30, 2010 request by plaintiff O'Loughlin and Robert Wheeler through counsel to inspect the records went unanswered. Ms. O'Loughlin made two similar requests in August of 2011 that were answered and the records made available. On December 30, 2011, the board issued a Rule Regarding the Inspection and

Copying of Books and Records. This Rule satisfies the requirements of the statute and By-Laws governing the disclosure of the Association's records.

The evidence established that prior to December 20, 2011, the board responded to some, but not all requests to inspect and copy Association financial records. There was no evidence presented at trial that after December 20, 2011, the Association violated its duties to make its records available to Association members. On the contrary, and in view of the extensive discovery in this case, and in view of the voluminous records introduced into evidence at trial, it would appear that all conceivable records have been produced.

{¶ 60} Reviewing the relevant statutory law, Association bylaws, and the evidence produced at trial, we agree with the trial court that the records in question have been produced and that the December 30, 2011 adoption of the rule regarding the inspection and copying of books and records was appropriate.

{¶ 61} Appellants next assert that the court erred in failing to invalidate the liens with regard to delinquent assessments for the operating years 2010-2011. Specifically, they contend that proper notice of the assessments was required under R.C. 5311.081(C), which provides:

(C)(1) Prior to imposing a charge for damages or an enforcement assessment pursuant to division (B)(12) of this section, the board of

directors shall give the unit owner a written notice that includes all of the following:

(a) A description of the property damage or violation;

(b) The amount of the proposed charge or assessment;

(c) A statement that the owner has a right to a hearing before the board of directors to contest the proposed charge or assessment;

(d) A statement setting forth the procedures to request a hearing pursuant to division (C)(2) of this section;

(e) A reasonable date by which the unit owner must cure the violation to avoid the proposed charge or assessment.

{¶ 62} Appellants' argument relies on an Eighth Appellate District case which examined the validity of a lien imposed for unpaid assessments owed to a condominium association. *Country Club Condominium Owners' Assn. v. Sammon*, 8th Dist. Cuyahoga No. 99220, 2013-Ohio-3528.

{¶ 63} In *Sammon*, the condominium unit owner was assessed for amounts expended by the association for repairs to his balcony which caused a water damage in the unit below. Appellant was also advised by letter to have the leak repaired and that failure to repair the leak by a date certain would result in a $25 daily assessment. *Id.* at ¶ 3.

{¶ 64} A few months after appellant advised the Association that the repairs had been made and providing an invoice outlining the same, the downstairs unit owner again

26.

complained about leaks in her unit. *Id.* at ¶ 6-7. Following another repair and complaint about leaking, the Association sent appellant a letter informing him that it had retained a contractor to complete the repair and that he was responsible for payment. *Id.* at ¶ 7. The letter did not provide appellant with an opportunity to be heard. *Id.*

{¶ 65} On appeal, the court determined that the $25 noncompliance penalty as well as the contractor's fee fell under the term "enforcement assessment" under R.C. 5311.081. The court distinguished the association's right to "make assessments for the payment of common expenses and shall have a lien for such assessments." *Id.* at ¶ 19. The court then noted that because the charges stemmed from the owner's duty to make the repairs, the association was required to provide the owner with notice and opportunity for a hearing under the statute. *Id.*

{¶ 66} In the present matter, the amounts at issue, unlike *Sammon*, are not based upon late charges or charges for repairs made. The sums are simply for unpaid assessments, easily calculated and not subject to interpretation. Thus, the statutory notice and hearing requirement was not required.

{¶ 67} Appellants further argue that the evidence at trial demonstrated that appellees breached the bylaws by discriminatorily filing liens against appellants and no other unit owners also in arrears. Appellants argue that the liens were filed due to contentiousness between them and the Board regarding the requested budget and financial documents.

27.

{¶ 68} During trial, the Board members were all questioned about their reasoning for filing liens against appellants and not others in arrears in paying their Association dues. The distinguishing fact was that the other unit owners were forthcoming about financial difficulties and expressed a desire to pay their dues. Ultimately, the Board members had discretion as to whether or not a lien would be filed and against which unit owners.

{¶ 69} Similar to the arguments relating to discrimination, appellants contend that the Board should be held liable for their acts and omissions committed in bad faith. "Bad faith" has been defined as "'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45, (1962), paragraph two of the syllabus.

{¶ 70} Reviewing the claim, we agree with the observation of the trial court that the Board, particularly appellee Snyder, was at times "heavy handed" but there is no evidence that his actions or inactions were motivated by anything other than the benefit of the Association.

{¶ 71} During trial, appellants were permitted to amend their complaint to add a claim for spoliation of evidence. Appellants claim was that appellee Snyder destroyed paper upon which he made calculations for the proposed budget. Further, appellants

point to the notebook of appellee Joyce within which he kept notes relating to Association affairs; the notebook was lost at some point between his deposition and trial.

{¶ 72} In order to establish a claim for spoliation or destruction of evidence, a party must demonstrate:

(1) pending or probable litigation involving the plaintiff,

(2) knowledge on the part of defendant that litigation exists or is probable,

(3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts * * *. *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St.3d 28, 29, 615 N.E.2d 1037 (1993).

{¶ 73} Reviewing the record below, we find no evidence that appellees willfully destroyed evidence in order to disrupt appellants' case. During appellee Snyder's testimony he candidly admitted to destroying the numbers he wrote down to assist with tabulating the Association budget. However, as stated above, there is no indication that his actions were done deliberately to disrupt appellants' case and, again as stated above, the numbers were directly taken from preceding statements which were available through discovery. As to appellee Joyce, the mere fact that the notebook could not be located does not establish an actionable claim.

{¶ 74} Based on the above, we find that the trial court's judgment was supported by competent, credible evidence and the findings of fact and conclusions of law were not

against the manifest weight of the evidence. Appellants' seventh and ninth assignments of error are not well-taken.

**Post-Trial**

{¶ 75} In their eighth assignment of error, appellants argue that the court erred when it denied their request to file objections or amendments to appellees' proposed findings of fact and conclusions of law. Civ.R. 52 provides, in part:

> When a request for findings of fact and conclusions of law is made, the court, in its discretion, may require all or any of the parties to submit proposed findings of fact and conclusions of law; however, only those findings of fact and conclusions of law made by the court shall form part of the record.

{¶ 76} As quoted, the trial court had discretion to request that a party submit proposed findings of fact and conclusions of law. There is no provision under the rule for the filings of objections to a party's submission. Regardless, appellants have failed to demonstrate how they were prejudiced by the denial. Appellants' eighth assignment of error is not well-taken.

{¶ 77} Appellants' tenth and final assignment of error argues that the trial court erred by granting appellees an award of attorney fees in the amount of $130,158.23, jointly and severally. Appellants argue that appellees were only entitled to recover attorney fees incurred in the prosecution of their action to foreclose the liens, not in defense of appellants' claims. We first note that our review of a trial court's award of

30.

attorney fees is for an abuse of discretion. *Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 34, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991).

When considering an award of attorney fees, Ohio follows the "American Rule," under which a prevailing party may not generally recover attorney fees. Attorney fees may be awarded, however, if (1) a statute creates a duty, (2) an enforceable contract provision provides for an award of attorney fees, or (3) the losing party has acted in bad faith. (Internal citation omitted.) *Hagans v. Habitat Condominium Owners Assn.*, 166 Ohio App.3d 508, 2006-Ohio-1970, 851 N.E.2d 544, ¶ 42 (2d Dist.).

{¶ 78} Appellants first point to Declaration Article XV, Section 5(g), which was relied upon by appellees in their application for attorney fees, and provides in part:

In any such foreclosure action, the Owner or Owners affected shall be required to pay a reasonable rental for that Unit during the pendency of such action, and the Association as Plaintiff in any such action shall be entitled to become a purchaser at the foreclosure sale. In any such action, interest and costs of such action (including attorneys' fees) shall be added to the amount of any such assessment, to the extent permitted by Ohio law.

{¶ 79} Amended in 2004, R.C. 5311.18(A)(1)(b) authorizes the collection of such fees and provides that where a lien for nonpayment of common expenses is filed by a unit owners' association, the following expenses may be recovered: "Interest, administrative

31.

late fees, enforcement assessments, and collection costs, attorney's fees, and paralegal fees the association incurs if authorized by the declaration, the bylaws, or the rules of the unit owners association and if chargeable against the unit."

{¶ 80} A hearing on appellees' application for attorney fees was held on May 19, 2016. Appellants did not dispute the reasonableness of the amount of the fees, including the number of hours and the hourly rate; rather, they argued that a distinction should be drawn between the fees incurred pursuing the foreclosure action and the defense of appellants' counterclaims. Appellees asserted that the pursuance of the foreclosure of the liens necessitated the defense of the counterclaims thus, the amounts could not be separated. Appellants further argued that the attorney fees incurred in the first action, which was voluntarily dismissed, should not be recoverable because the case was not decided on the merits. Finally, appellants made arguments alleging that appellees failed to mitigate their fees by not submitting claims to insurance and that any fees incurred in requesting the production of documents should be excluded.

{¶ 81} After reviewing the arguments made by the parties, the court issued its findings of fact and conclusions of law from the bench. As to what fees were recoverable, the court found:

> [T]he defendants could not have prosecuted the foreclosure action without defending the claims of the plaintiff. These issues are inseparable.
>
> * * *

32.

Now, if the plaintiff had prevailed on claims one though four, the liens would have been invalidated and the foreclosure action defeated. These in effect were affirmative defenses to the actions for foreclosure and the compensatory damages, so they really are just totally inseparable from the foreclosure action.

{¶ 82} The court also rejected appellants' argument that appellees could not recover attorney fees for the prior, dismissed action. The court noted that it was a voluntary dismissal, stipulated to by the parties, and that the stipulation included the provision that "plaintiff could refile the suit and that all pleadings in the first case would be adopted in the second case." The court rejected the additional arguments. The court then issued judgment in the sum of $130,158.23, in accordance with the affidavit and detailed billing statements submitted by appellees as well as the parties' stipulation of the amounts billed from January 2016, through the date of the hearing.

{¶ 83} Reviewing the trial court's bench decision, we agree that attorney fees incurred in pursuance of the foreclosure and in defending appellants' attempts to invalidate the liens are inseparable. Appellants also argue that the attorney fees incurred in the prior, voluntarily dismissed action could not be recovered. In support, they rely on two Ohio Supreme Court cases. In both *Sturm v. Sturm*, 63 Ohio St.3d 671, 590 N.E.2d 1214 (1992), and *Muze v. Mayfield*, 61 Ohio St.3d 173, 573 N.E.2d 1078 (1991), the court held that attorney fees are not recoverable as costs under Civ.R. 41(D). However,

33.

the court acknowledged the exception of where the recovery of attorney fees is statutory. *Sturm* at 675.

{¶ 84} Based on the foregoing, we find that the trial court did not abuse its discretion when it awarded attorney fees incurred in the enforcement of the Association's liens against appellants. Appellants' tenth assignment of error is not well-taken.

{¶ 85} On consideration whereof, we find that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellants are ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                         _____

JUDGE

Thomas J. Osowik, J.      

                                           _____

James D. Jensen, J.                            JUDGE

CONCUR.

                                           _____

JUDGE